**Robin Lynn BAILEY, Plaintiff–Appellant,**

v.

**Anthony NEWLAND, Warden, Defendant–Appellee.**

No. 99–17654.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 2001.

Filed Aug. 31, 2001

David M. Porter, Assistant Federal Defender, Sacramento, California, for the appellant.

R. Todd Marshall, Deputy Attorney General, Sacramento, California, for the appellee.

Before: GOODWIN, GRABER, and McKEOWN, Circuit Judges.

GOODWIN, Circuit Judge:

Robin Lynn Bailey appeals the judgment denying his petition for a writ of habeas corpus. He argues that his appellate counsel provided ineffective assistance by failing to challenge the California superior court's denial of his motion to suppress evidence seized from a motel room after he was arrested outside the room.

## I.  Factual and Procedural History

Bailey was convicted in California superior court of second-degree robbery and assault with a deadly weapon. Critical items of evidence in his conviction included a pistol seized by officers who arrested Bailey. Bailey's trial counsel filed a motion to suppress grounded on his theory that (1) the officers did not have reason-able suspicion to detain Bailey when he stepped from the motel room; (2) the officers' detention of Bailey was a pretext to search the room; (3) there were no exigent circumstances that would justify warrantless entry, search, and seizure; and (4) the police could not seize the evidence pursuant to the plain view doctrine because it was not necessarily contraband.

Officers Troy Phillips and Glen Cadwell testified at the suppression hearing. Their story is summarized as follows:

Officers Phillips and Cadwell responded to a tip that two armed black males staying in room 15 of the Lull-a-bye Motel were selling drugs. When the officers approached the motel, they saw a blue Volvo parked directly in front of room 15, with no other cars parked in the immediate area. Although it was approximately 2:15 a.m., the lights were on in the room. One of the officers called in a license check on the Volvo, and the dispatcher informed him that the car was stolen. Officers Phillips and Cadwell then approached the room with the intent to conduct "a knock-and-talk search," which Officer Phillips described as an opportunity to advise the occupants that the officers had received a complaint of criminal activity, to ask the occupants if they would allow the officers to come into the residence and if they will speak with the officers, and for the officers to take a look inside the room while the door is open.

Officer Phillips testified that before either officer could knock on the door, the first occupant, later determined to be Anthony Cowans, emerged from the room and stepped onto the porch outside the door. Contrary to Officer Phillips' testimony, Officer Cadwell testified that Phillips knocked on the door and announced the officers' presence before Cowans left the room. Officer Phillips testified that after Cowans left the room, Officer Phillips

identified himself as a police officer and informed Cowans that he would be detained. According to Officer Phillips, someone inside the room then slammed the door.

Officer Cadwell promptly searched Cowans, handcuffed him, and placed him in a police car. Officer Phillips testified that he then began knocking on the door and he identified himself as a police officer. He testified that he knocked for about one-and-a-half to two minutes while continuing to identify himself as a police officer but issued no commands or orders. Officer Phillips was in uniform and had his gun drawn. After some delay, Bailey, opened the door and stepped out of the room. After Bailey left the room, Officer Phillips identified himself, returned his gun to its holster, handcuffed Bailey, and placed him in a separate patrol car from Cowans.

Officer Phillips testified that he then returned to the room and looked through the doorway, which had remained open, and that he saw underneath a bed what appeared to be a black revolver with a wooden handle. On cross-examination, Officer Phillips also testified that from his vantage point outside the door, he could see burnt matches, one-inch-by-one-inch baggies, a set of keys, and glass pipe commonly used with drugs. He testified that he was concerned that there might be other people in the room who could attack the officers with the gun, and therefore, he entered the room, retrieved the gun, and conducted a protective sweep of the room.

Officer Cadwell testified that, a few hours earlier, while on his way to work, he had observed two black men inside a blue Volvo. He said he had a clear view of the occupants because the cars sat alongside each other at an intersection. He noticed that the passenger was a black male and had a jeri curl and that the driver was also a black male and that he had ponytails on the right side of his head. Officer Cadwell explained that he noticed the car because "[w]ithout sounding prejudice [sic] or anything, they just didn't fit the car," and because "it was odd that someone that young would be driving that type of vehicle." He also testified that the Volvo seemed out of place in that part of town. When he arrived at the motel, although he was not 100 percent sure, he did believe that it was the same Volvo. Officer Cadwell said that when he saw Cowans and Bailey, he recognized them as the men he had previously seen in the blue Volvo. The record is unclear whether the officers exchanged this information before making the two arrests.

Based on the testimony of the two officers, the state trial court denied the motion to suppress. In his state court appeal, Bailey's attorney argued only that Bailey's 1985 conviction did not qualify under the habitual offender statute but did not challenge the denial of the motion to suppress. The court of appeal affirmed the judgment, and Bailey's subsequent appeal to the California Supreme Court, raising the same issue, was denied without opinion.

Bailey filed several petitions for writs of habeas corpus in the California courts arguing, among other things, that his appellate counsel was ineffective for having failed to challenge the state court's denial of his motion to suppress evidence. The relevant petitions were denied without opinion.

In this court the state has conceded that Bailey has exhausted his state remedies and that the federal courts now have jurisdiction over his claim of ineffective assistance of appellate counsel. The state argues that any failure on the part of Bailey's appellate counsel to raise the legality of the seizure of the pistol and other evidence in the state appeal was not prejudicial for purposes of *Strickland v. Wash-*

*ington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) because Bailey would not have prevailed on the appeal if counsel had raised the point. The district court agreed.

## II. Standard of Review

■ We review the district court's decision to deny a 28 U.S.C. § 2254 habeas petition de novo. *Bribiesca v. Galaza,* 215 F.3d 1015, 1018 (9th Cir.2000). Because Bailey filed his petition after April 24, 1996, it is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *La Crosse v. Kernan,* 244 F.3d 702, 704 n. 2 (9th Cir.2001); *Jeffries v. Wood,* 114 F.3d 1484, 1499 (9th Cir.1997) (en banc). Under the relevant provision of AEDPA, a federal court may grant relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

■ A state court's decision can be "contrary to" Federal law

(1) when the state court has failed to apply the correct controlling authority from the Supreme Court or (2) when the state court has applied the correct controlling authority from the Supreme Court to a case involving facts 'materially indistinguishable' from those in a controlling case, but has nonetheless reached a different result.

*Shackleford v. Hubbard,* 234 F.3d 1072, 1077 (9th Cir.2000), *petition for cert. filed,* No. 00–9987 (U.S. May 14, 2001).

A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.

*Van Tran v. Lindsey,* 212 F.3d 1143, 1150 (9th Cir.), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000).

■ Because we "are presented with a state court decision that is unaccompanied by any *ratio decidendi,*" "an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000); *accord Wilcox v. McGee,* 241 F.3d 1242, 1245 (9th Cir.2001).

## III. Discussion

"We review claims of ineffective assistance of appellate counsel according to the standard set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)...." *Miller v. Keeney,* 882 F.2d 1428, 1433 (9th Cir.1989); *see also Pollard v. White,* 119 F.3d 1430, 1435 (9th Cir.1997). To show that an attorney's representation of a client was ineffective under *Strickland,* the petitioner must establish that: (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052.

■ We have stated, in applying *Strickland* to a claim of ineffective assistance of appellate counsel, that

[t]hese two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hall-

marks of effective appellate advocacy.... Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason-because she declined to raise a weak issue.

*Miller*, 882 F.2d at 1434 (citations and footnotes omitted).

█ Moreover, "in order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show that he would have prevailed on the suppression motion, and that there is a reasonable probability that the successful motion would have affected the outcome." *Van Tran*, 212 F.3d at 1156 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)).

█ It is clearly established Federal law that a warrantless search or seizure inside a home is presumptively unreasonable under the Fourth Amendment. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). This prohibition against unreasonable searches and seizures extends to protect the legitimate expectation of privacy of the occupant of a hotel or motel. *See Stoner v. California*, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

Bailey contends that clearly established Federal law, at the time of his conviction, required a warrant or probable cause before officers could obtain visual access to a private dwelling through use of a command under color of authority. He argues that Officer Phillips' persistence in attempting to make contact with the occupant or occupants of room 15 after Cowans had left the room amounted to a demand to open the door, and that when Officer Phillips obtained visual access to the room when Bailey complied with the officer's demand, the resulting view was a search in violation of the Fourth Amendment.

Bailey's contention finds some support in *United States v. Winsor*, 846 F.2d 1569 (9th Cir.1988) (en banc). In *Winsor* the police decided to enter a hotel and go room to room looking for a robbery suspect. *Id.* at 1571. At each room the police knocked on the door, identified themselves, and demanded that the door be opened. *Id.* When the police knocked on the door to the defendant's room and demanded that it be opened, the defendant's brother obeyed. The officers recognized the defendant's brother as the robbery suspect, entered the room, and found the defendant and evidence of the robbery. *Id.* We held "that the police did effect a 'search' when they gained visual entry into the room through the door that was opened at their command,"[1] *id.* at 1573, which the officers needed probable cause to justify, *id.* at 1573–74. We have not found a Supreme Court decision that squarely supports our *Winsor* holding.

█ In *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court explained what constitutes "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)(1) and stated that only its holdings (as opposed to dicta), at the time of the relevant state-court decision, are binding on the state court. The Court stated that,

[w]ith one caveat, whatever would qualify as an old rule under our *Teague* jurisprudence will constitute "clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d)(1). The one ca-

---

1. We rejected the government's argument that the search could be sustained on the basis of consent because the defendant's brother "voluntarily" opened the door. *See*

*Winsor*, 846 F.2d at 1573 n. 3. On the facts of the case, we held that there could be no consent as a matter of law. *Id.*

veat, as the statutory language makes clear, is that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.

*Id.* (citation omitted). Under *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." Stated differently, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* Therefore, in determining whether the relief requested would constitute a new rule, the question becomes " 'whether a state court considering [the petitioner's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.' " *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (quoting *Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)). Although only Supreme Court holdings are binding, we look to our own case law "for its persuasive authority in applying Supreme Court law." *Van Tran,* 212 F.3d at 1154.

■■■ Bailey contends that *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), cited in *Winsor,* supports his view that the principles set forth in *Winsor* are clearly established Federal law. *See Winsor,* 846 F.2d at 1573–74 (stating that "*Hicks* apparently adopted a bright-line rule requiring probable cause to support a search of a dwelling"). The rule announced in *Winsor* is at least consistent with the teaching of the Supreme Court in *Hicks,* 480 U.S. at 328, 107 S.Ct. 1149 ("A dwelling-place search, no less than a dwelling-place seizure, requires probable cause . . . .") and *Payton,* 445 U.S. at 589, 100 S.Ct. 1371 ("In none is the zone of privacy more clearly defined than when bounded by the unambiguous physi-

cal dimensions of an individual's home . . . ."). Therefore, we hold that the rule in *Winsor* is clearly established Federal law for purposes of AEDPA and that if the officers commanded Bailey to open the door, and he did not do so voluntarily, they needed either a warrant or probable cause. *See Winsor,* 846 F.2d at 1573–78.

Here, we are confronted with a record in which the state trial court made few findings of fact, and no finding at all whether Bailey had voluntarily left the room. The court also made no finding that the officers had exchanged information about the two suspects or that the officers had probable cause to believe that the individual or individuals remaining in the room were committing a crime.

■■■ Nevertheless, the circumstantial evidence in the record suggests that Bailey did not voluntarily open the door or give the officers visual access to the room. The Fourth Amendment test for valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). After Cowans left the room, Bailey forcefully closed the door, indicating that the remaining person or persons in the room did not wish to talk to police. The circumstances show that Bailey was in the room, slammed the door, and heard Officer Phillips knocking on the door for one and a half to two minutes, while identifying himself as a police officer. Moreover, Officer Phillips stated that it was his intention to stay at the door until someone answered it. Based on these facts and the failure of the state trial court to make findings, we have no basis to conclude that Bailey voluntarily answered the door. Therefore, Officer Phillips needed either a warrant or probable cause to demand entrance. *See Winsor,* 846 F.2d at 1573–74.

■ Once Officer Cadwell recognized Cowans as the passenger in the Volvo, if the officers exchanged information, then the officers could reasonably conclude that the driver of the Volvo was inside the motel room. Officer Cadwell had seen another black man driving the stolen car a little more than three hours earlier (at approximately 10:50 p.m.), and the tip had placed another black male engaged in criminal wrongdoing in the room. Immediately after Cowans left the room and Officer Phillips identified himself, another occupant of the room slammed the door.

■ Probable cause is established if, at the time the arrest is made, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Moreover, "[l]aw enforcement officers may draw upon their experience and expertise in determining the existence of probable cause." *United States v. Garza,* 980 F.2d 546, 550 (9th Cir.1992). Assuming that the state court found probable cause on these facts, it would not have been an unreasonable application of clearly established Federal law.

However, Bailey argues from a silent record on communication between the officers that Officer Phillips, who knocked on the door for one-and-a-half to two minutes did not have probable cause to believe that the driver of the car was in the room, because Phillips was not aware that Officer Cadwell had recognized Cowans. Bailey argues with some force that, for probable cause to be based on the collective knowledge of the officers, there must be a communication between the officers. *See United States v. Del Vizo,* 918 F.2d 821, 826 (9th Cir.1990) ("When there has been communication among agents, probable cause can rest upon the investigating agents' 'collective knowledge.'").

■ Once again Bailey's deconstruction of a silent record raises the issue of whether the state court violated clearly established Federal law within the meaning of AEDPA. *See* 28 U.S.C. § 2254. Neither party has cited a Supreme Court case that addresses whether knowledge can be imputed between officers who are working in close concert and whether the imputation of collective knowledge can be used to establish probable cause. The general rule is that "where law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all." *Illinois v. Andreas,* 463 U.S. 765, 772 n. 5, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). In *Andreas* the question was whether, in the context of a "controlled delivery," a DEA agent's absence when a package was resealed by customs officers somehow made less than certain his knowledge of the package's contents. *See id.* at 768, 771 n. 5, 103 S.Ct. 3319. The facts of that case indicated that the DEA agent knew of the contents of the package based on communications with other members of the investigation. *See id.* at 768, 103 S.Ct. 3319. However, the Supreme Court has not addressed whether there must be a communication between the officers to support this presumption.

Similarly, the lower federal courts have not adopted a uniform rule whether a stop or arrest can be justified by looking to the collective knowledge of the officers, in the absence of evidence of a communication between the officers. *See, e.g., United States v. Shareef,* 100 F.3d 1491, 1504 (10th Cir.1996) (discussing the split of authority concerning whether and under what circumstances knowledge can be imputed between officers). Some courts that

have considered this issue have held the knowledge of officers working closely together to be mutually imputed without requiring proof of actual communication. *See United States v. Edwards,* 885 F.2d 377, 382–83 (7th Cir.1989) (holding that "[a] supervising officer's knowledge about a defendant cannot be relied upon to provide probable cause for [the defendant's] arrest where there is no evidence that such knowledge was communicated to the agents on the scene who actually made or ordered the defendant's arrest" but that knowledge can be imputed between officers who make an arrest together). At least two courts have allowed knowledge to be imputed between officers upon evidence of some communication between them, although without evidence that the specific facts necessary to establish probable cause were communicated. *See United States v. Lee,* 962 F.2d 430, 435 (5th Cir.1992) ("It is not necessary that the arresting officer himself have personal knowledge of all of the facts.... [P]robable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest, when there is some degree of communication between the two.") (citation and internal quotation marks omitted); *Collins v. Nagle,* 892 F.2d 489, 495 (6th Cir.1989) (holding that because the knowledge of the investigators working together and in communication with each other is mutually imputed, not every arresting officer was required to possess all the information that, when amassed, gave rise to probable cause).

Still other courts have rejected the idea of imputed knowledge when the district court found that the information at issue had not been shared. *See Shareef,* 100 F.3d at 1504. Here it is clear from the record that there was communication between the officers at the scene of the arrest, although no finding was made on what facts were communicated between the officers. In view of the difference of opinion among the courts of appeal, despite the silence of the state court on what was communicated between the officers, we cannot say that the state court unreasonably applied clearly established Federal law if it imputed knowledge between Officer Cadwell and Officer Phillips and found that the officers had probable cause to demand that the door be opened.

■ Next, we hold that Bailey has not established that there was an unreasonable application of clearly established Federal law when the state court concluded that, when Bailey stepped outside the motel room and Officer Cadwell recognized him as the driver, the officers had probable cause to arrest him for theft of the Volvo. Because the officers had probable cause when Bailey stepped from the room, the arrest was lawful. *See United States v. Watson,* 423 U.S. 411, 416–19, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (holding that the Fourth Amendment is not violated by a warrantless arrest made in a public place).

■ Finally, we turn to the question whether the officers' physical entry into the motel room after spying the pistol and other items through the open door violated the Fourth Amendment. It is clearly established Federal law that the warrantless search of a dwelling must be supported by probable cause and the existence of exigent circumstances. *See Payton,* 445 U.S. at 587–90, 100 S.Ct. 1371; *United States v. Lindsey,* 877 F.2d 777, 780 (9th Cir.1989). Officers have probable cause for a search when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

■ Here, when the officers looked through the doorway to the room, the offi-

cers could see baggies, and a pipe commonly used to smoke drugs. From these circumstances, the officers could conclude that there was evidence in the room of a drug-related offense. Moreover, the officers could see keys in the room and knew that the two individuals in their custody had been driving the stolen Volvo, which was parked directly in front of room 15, only hours earlier. Based on these circumstances, the officers could conclude that the keys were evidence of the car theft. Finally, because of the abundance of evidence of drug- and theft-related offenses, the officers could reasonably conclude that the gun was evidence of a crime. We hold that under these circumstances the officers had probable cause to believe that the room contained contraband or evidence of a crime.

■■■■■ However, the existence of probable cause to arrest and search does not eliminate the need for a search warrant absent exigent circumstances. *See Payton,* 445 U.S. at 590, 100 S.Ct. 1371. The Supreme Court, in discussing exigent circumstances, has stated that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Similarly, we have stated that "[e]xigent circumstances are present when 'a reasonable person [would] believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'" *United States v. Gooch,* 6 F.3d 673, 679 (9th Cir.1993) (quoting *United States v. McConney,* 728 F.2d 1195, 1199 (9th Cir.1984) (en banc)) (alteration in the original). "The government bears the burden of showing the existence of exigent circumstances by par-

ticularized evidence," and this burden is not satisfied by mere speculation that the exigency exists. *United States v. Tarazon,* 989 F.2d 1045, 1049 (9th Cir.1993). Moreover, "the presence of exigent circumstances necessarily implies that there is insufficient time to obtain a warrant; therefore, the government must show that a warrant could not have been obtained in time." *Id.*

■■■■ Here, the exigency was the risk of danger to the officers and other innocent persons. Although "[t]he presence of a firearm alone is not an exigent circumstance," *see Gooch,* 6 F.3d at 680, in this case the officers had in custody two suspected car thieves who were in possession of drugs, and at least one of whom slammed the door and initially attempted to remain in the hotel room after the officers arrived. The officers were unable to view the entire room from the doorway and were uncertain whether other persons, who may also have been involved with the stolen car or drugs, might have been hiding in the room, closet, or bathroom. Moreover, it was approximately 2:15 a.m. in a high-crime area. It would not have been unreasonable for the officers to believe, or the state court to find, that there was an ongoing threat and that it was necessary for the officers to respond quickly. Therefore, although if we were presented with this issue on direct appeal we may not have found exigent circumstances, it would not have been an unreasonable application of clearly established Federal law to find entry into the room to seize the gun was justified by the exigent circumstances of the situation.

■■■■ The district court did not err in denying habeas relief. The state court's denial of Bailey's suppression motion was not contrary to clearly established Federal law, and Bailey failed to show that the suppression motion would have been a

winning issue if his counsel had pursued it on appeal. Accordingly, the prejudice prong of *Strickland* is not established and the judgment is AFFIRMED.