**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Donnie Ray WALKER, aka Donnie**
**Rae Walker, Defendant—**
**Appellant.**

No. 01–30330.
D.C. No. CR–00–00030–JDS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 2002.

Decided Oct. 1, 2002.

Before HILL *, GOULD and BERZON, Circuit Judges.

### MEMORANDUM **

Donnie Rae Walker appeals his conviction for conspiracy to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. § 846, pursuant to a conditional plea agreement. Walker argues that the police officers at the scene

lacked probable cause to arrest him and that the district court therefore erred in denying his motion to suppress evidence seized through a warrantless search of his vehicle. "Whether police had probable cause to arrest is a mixed question of law and fact, which we review de novo." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir.1999) (citation omitted). We conclude that the officers had probable cause to arrest Walker and therefore affirm. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

■ 1. As an initial matter, we disagree with the United States' contention that Walker's detention was justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Our standard of review is de novo. *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir.2001) ("whether a seizure exceeds the bounds of a *Terry* stop and becomes a de facto arrest is reviewed de novo.") (quotation marks and citation omitted). We must consider "the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much [Walker]'s liberty was restricted," *Washington v. Lambert*, 98 F.3d 1181, 1190 (9th Cir.1996), as well as "the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken." *Id.* Ultimately, "[t]here has been an arrest if [ . . . ] a reasonable person would conclude that he was not free to leave after brief questioning." *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir.1990). In the totality of the circumstances of this case, we find the bounds of a *Terry* stop were exceeded.

Walker was stopped at gunpoint, handcuffed, placed in a patrol car, and detained

---

* The Honorable James C. Hill, Senior United States Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

for thirty-seven minutes before the arrival of a narcotics-sniffing dog. "[H]andcuffing a suspect and placing him in a patrol car during an investigatory stop requires some reasonable justification." *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1321 (9th Cir.1995). *See also Del Vizo,* 918 F.2d at 825 (where a drug-trafficking suspect did not resist arrest, officers exceeded the bounds of a permissible investigative· stop by ordering him from his car at gunpoint and handcuffing him). Even if a "felony stop" was in order while there were only two officers on the scene, *cf. Miles,* 247 F.3d at 1009 (finding detention reasonable where two officers, with guns drawn, detained a suspect matching a description of a gunman and handcuffed him); *Lambert,* 98 F.3d at 1190 (noting that when an officer is alone or out-numbered, more aggressive tactics may be justified), after four more officers showed up there was little reason to continue to subject Walker to the type of detention he experienced.

The length of time Walker was detained—thirty-seven minutes—casts further doubt on whether this was a *Terry* stop. " '[T]he critical inquiry is whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.' " *United States v. Thompson,* 282 F.3d 673, 677 (9th Cir.2002) (citation omitted). There is only one reported case of this court in which a detention of an individual for as long as thirty-seven minutes was determined to be a *Terry* stop rather than an arrest, and in that case the suspects' own behavior was "the principal cause of the extended detainment." *Unit-*

ed *States v. Richards,* 500 F.2d 1025, 1029 (9th Cir.1974). Here, in contrast, the arresting officers testified that Walker was cooperative and did nothing alarming after his vehicle was stopped and he was ordered back into it. So the length of detention was in no way traceable to Walker's behavior.

We conclude that by the end of his detention if not at the start, Walker was arrested, not detained under *Terry.*

■ 2. Because Walker was arrested, the officers had to have probable cause to detain him. "Probable cause is established if, at the time the arrest is made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," *Bailey v. Newland,* 263 F.3d 1022, 1031 (9th Cir. 2001) (citation omitted). We conclude that the officers had probable cause to arrest Walker.

Walker was arrested in California based on information furnished in a be-on-the-lookout (BOLO) bulletin sent by a police officer in Montana to the Stanislaus County, California Sheriff's Office. In the BOLO, the Montana officer indicated that the evidence available to him, while "very reliable," was not sufficient to establish probable cause.[1] The BOLO did, however, correctly predict Walker's presence in the Modesto area three days before he was in fact found there. The bulletin's fairly accurate prediction was based on information provided by a confidential informant with a history of reliability. Our case law supports the important role played by reliable informants in establishing probable cause.

---

1. The BOLO alert stated: "According to very reliable information, Walker left this area on 1/4/00 enroute to the Modesto, CA area. Informant states that Walker will be returning on 1/6/00 and will be bringing back approxi-

mately 2 kilos of methamphetamine. Walker has prior drug charges in California and is under investigation by this office for criminal distribution. If located develop PC [probable cause] for stop and notify this office."

*See, e.g., United States v. Reeves,* 210 F.3d 1041, 1046 (9th Cir.2000) (finding probable cause after informant "had observed 'one quarter, to one half of an ounce of meth-amphetamine ... packaged up in several small plastic packages for sale' at Reeves' residence in the past 72 hours"). The arresting officers were entitled to rely on their Montana colleague's representations about the informant's reliability. *United States v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). More-over, the fact that the informant's predic-tion about Walker's presence near Modes-to turned out largely to be true strongly corroborated the informant's reliability, *see generally United States v. Ayers,* 924 F.2d 1468, 1478 (9th Cir.1991) (listing "cor-roboration of details of an informant's tip by independent police work" as contribut-ing to reliability determination (citation omitted)), and went a long way toward establishing probable cause.

Aside from the bulletin's accurate pre-diction of Walker's presence in the area, his behavior after the California police offi-cers turned on their lights to stop his vehicle crystallized probable cause to ar-rest Walker. Although there are poten-tially innocent explanations for each of Walker's reactions, taken as a whole and in context they support his arrest and the subsequent search.

Walker first continued driving for about 250 feet and then made a left turn into an industrial park instead of pulling over to the right, as would be more usual. In that park, he drove on for about 300 feet before stopping. The police officers testified that Walker looked to his left and right furtive-ly after their lights were activated and that he weaved the car as he did so. The inference they drew from these move-ments is that Walker was looking for an escape route. Once Walker stopped his vehicle, he exited quickly, an action both officers found atypical.

Considering these facts, we find that the BOLO's correct prediction, the BOLO's re-port of a reliable informant, and Walker's anomalous responses to the police after they signaled him to pull over provide a sufficient belief that he "had committed or was committing an offense." *Bailey,* 263 F.3d at 1031. Because Walker's arrest was lawful, the search of his vehicle inci-dent to that arrest was also valid. *New York v. Belton,* 453 U.S. 454, 461, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Potter,* 895 F.2d 1231, 1234 (9th Cir. 1990).

3. Although Walker's detention was a de facto arrest, there was probable cause to arrest him and to search his vehicle. Accordingly, the judgment is AF-FIRMED.