CALLAHAN, Circuit Judge,
dissenting:
I respectfully dissent.
What we have here is a very dangerous situation that was resolved safely for all concerned — Fisher, the public, and the police — because of good police work. Nevertheless, the majority undertakes to micromanage, or worse, browbeat the police for failing to obtain a telephonic warrant in the midst of a police standoff that could have turned deadly at any moment.[1] After reviewing all the facts and receiving proper instructions on the law, twelve jurors unanimously found that the police had handled the situation lawfully. We should accept the wisdom of the jurors’ decision.
As judges, we should not arm-chair quarterback a crisis from the safety of our chambers. Such post-game analysis is disconnected from reality and leads to the inappropriate determination, in this case that San Jose police officers need training despite the jury’s finding that they did nothing wrong. In my view, the police handled the situation in exemplary fashion and in full compliance with the law. I would reverse the district court’s grant of Fisher’s FRCP 50(b) motion and restore the jury’s verdict because the verdict was supported by substantial evidence.
A renewed motion for judgment as a matter of law pursuant to FRCP 50(b) is properly granted “if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury’s verdict.” Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir.2002). “A jury’s verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury’s conclusion, even if it is also possible to draw a contrary conclusion.” Id. Indeed, we may not substitute our view of the evidence for that of the jury. Id. The majority simply disregards this standard.
In addition, the majority concludes that the San Jose Police Department seized Fisher for purposes of the Fourth Amendment at three “possible junctures”: before 6:30 a.m., when they began surrounding his apartment; at approximately 1:00 p.m., when he was physically affected by the CS gas canisters, or alternatively at 2:35 p.m., when he submitted to the officers’ show of authority by submitting to police demands to come out of his apartment. This confusing, impractical, and unworkable conclusion is based on an unreasonable interpretation of the Supreme Court’s decision in California v. Hodari D., 499 U.S. 621, 628-29, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) that requires a logical leap to decide that a person surrounded in his apartment “escapes” for the purposes of the Fourth *1071 Amendment by disappearing from view or ignoring the bullhorns, CS canisters, throw phones, and the armed officers surrounding his apartment.
FACTS
The following facts emerge from the record. Fisher was drinking and cleaning 18 guns in his apartment. A security guard at his apartment complex called the police when Fisher’s behavior became menacing. The police arrived shortly after midnight. Fisher was unresponsive for the most part, but insisted on talking about his Second Amendment rights. At approximately 3:00-4:00 a.m., Officer Jan Males, a tactical negotiator, arrived. Fisher told her that he had a right to bear arms. He also invited her into his apartment, but threatened to shoot her if she came in. Officer Males considered this to be a criminal threat — a felony.
Throughout the night, officers observed Fisher through the windows of his apartment walking around with a rifle in his hand, and more than once, aiming the rifle out of the apartment in the general direction of the officers. Officer Boler testified that he saw Fisher point one of his rifles toward Sergeant Ryan and Officer Males twice between 2:45 a.m. and 4:00 a.m., and that he was moving his rifles around his apartment. At 6:23 a.m., Fisher was seen again with a rifle, apparently loading it.
At 7:00 a.m., the department’s Mobile Emergency Response Group (MERGE) took control of the scene, and the officers who originally responded to the scene left. By 7:30 a.m., the police had evacuated all of the apartments in Fisher’s building. One occupant, whose front door was near Fisher’s residence, was evacuated by cutting a hole in her apartment wall that allowed her to leave through a neighboring apartment instead of walking across the front of Fisher’s apartment. At 8:48 a.m., the police turned off the power in Fisher’s apartment in an attempt to force him out. They also broke his sliding glass door and tossed in a “throw phone” so that they could communicate with Fisher because his phone line was busy. At 10:52 a.m., the police set off a “flash-bang” device to get Fisher’s attention and briefly disorient him. At 1:00 p.m., police began throwing gas canisters into the apartment, to no avail. Finally, at 2:13 p.m., police established telephone contact with Fisher via the throw phone and he agreed to leave the apartment unarmed. The police then took him into custody.
DISCUSSION
A warrantless search does not violate the Fourth Amendment where officers have probable cause to believe that a crime has been committed, and there are exigent circumstances such that a warrant could not have been obtained without causing a dangerous delay. United States v. Manfredi, 722 F.2d 519, 522 (9th Cir.1983). Fisher concedes that officers had probable cause; the issue is whether exigent circumstances excused the City’s failure to obtain a warrant before arresting him. This inquiry requires us to determine first, when the warrantless arrest occurred, and second, whether there were exigent circumstances at the time of the arrest to excuse the failure to obtain a warrant. Our consideration of these issues on their merits is complicated by the majority’s unnecessary, and in my opinion, incorrect analysis of the jury instructions.
A. Instructional Error.
“Failure to object to an instruction waives the right of review.” Affordable Hous. Dev. Corp. v. City of Fresno, 433 F.3d 1182, 1196 (9th Cir.2006). The Ninth Circuit does not review the adequacy of *1072 instructions given where the party does not object. See Bird v. Lewis & Clark College, 303 F.3d 1015, 1022-23 (9th Cir.2002) (“As an initial matter, we note that Bird did not object to the instructions given by the district court. Accordingly, we do not review the adequacy of the instructions that were given.”).
The majority acknowledges that Fisher failed to object to the jury instructions concerning the law of arrest, but nonetheless it proceeds to argue that the district court’s jury instructions were incomplete and inadequate. Federal Rule of Civil Procedure 51 states that “no party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.” The majority’s insistence on considering, and criticizing the jury instructions is contrary to the Ninth Circuit’s role as an “enforcer of Rule 51.” Hammer v. Gross, 932 F.2d 842, 847 (9th Cir.1991). By refusing to abide by the principle that, where a party fails to object to the instruction, this court must “review [a] sufficiency of the evidence claim under the controlling instruction,” the majority threatens to undermine bedrock principles limiting the scope of our review of jury trials. Image Tech. Serv. v. Eastman Kodak Co., 125 F.3d 1195, 1206 (9th Cir.1997) (refusing to consider argument concerning jury instruction the party waived by failing to object.).
The focus in this case should remain on whether the jury’s verdict was supported by substantial evidence, discarding all evidence favorable to Fisher that the jury is not required to believe, and drawing all reasonable inferences in favor of the City of San Jose — not on jury instructions that were not only correct and complete, but that Fisher failed to object to during the trial. See Johnson v. Paradise Valley Unified School Dist., 251 F.3d 1222, 1227-28 (9th Cir.2001) (stating standard of review where the district court grants a Rule 50 motion.).
B. The Arrest.
The majority concludes that the war-rantless seizure for purposes of arrest occurred either at 1:00 p.m., when the CS canisters were thrown into Fisher’s apartment, or at 2:35 p.m., when Fisher came out of his apartment.[2] Citing United States v. Al-Azzawy, 784 F.2d 890 (9th Cir.1985), the City argues that the arrest occurred much earlier under clearly exigent circumstances, when police first began using tactics to encourage Fisher to leave his home.[3]
The majority suggests that Al-Azzawy can be distinguished because in that case, the suspect emerged from his dwelling soon after a show of authority by police, whereas Fisher did not for several hours after police began attempts to force him out of his apartment. To the majority, this distinction is significant, because an arrest requires either physical force or submission to the assertion of authority. Citing California v. Hodari D., 499 U.S. at 624-25, 111 S.Ct. 1547, the majority con- *1073 eludes that Fisher was not arrested until he submitted to the police.
In Hodari, the issue was whether the defendant had been seized within the meaning of the Fourth Amendment at the time he dropped a brick of cocaine when he saw an officer running toward him. 499 U.S. at 623, 111 S.Ct. 1547. Ultimately, the Supreme Court determined that there was no seizure under these facts. Nevertheless, the Court made clear:
“[A] person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.”
499 U.S. at 627-28, 111 S.Ct. 1547, quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Hodari D. does not require subjective submission to police authority for purposes of a Fourth Amendment seizure, as the majority suggests, nor is there any requirement that physical submission take place immediately following a show of authority by police. Instead, it stands for the unremarkable proposition that pursuit alone is an insufficient show of authority to constitute an arrest. Hodari D., 499 U.S. at 629, 111 S.Ct. 1547. More importantly, Hodari D. reiterated that the test for when someone is seized for the purposes of the Fourth Amendment is an objective one. Therefore, twelve jurors were presumably able to determine when “a reasonable person would have believed that he was not free to leave.” Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870.
Al-Azzawy and the cases cited therein make no mention of how much time passed between the police’s show of authority and the physical submission of the defendant. Al-Azzawy, 784 F.2d at 891. Indeed, Al-Azzawy holds that an arrest occurs at the time that police make clear that the suspect is not free to leave his or her dwelling:
[Wjhether an arrest has occurred depends upon an objective, not subjective, evaluation of what a person innocent of a crime would have thought of the situation, given all of the factors involved. When an arrest has occurred depends in each case upon an evaluation of all the surrounding circumstances. Primary among these is a determination of whether or not the defendant was free to choose between terminating or continuing the encounter with the law enforcement officers....
From a review of all of the circumstances surrounding the encounter between [the appellant] and the special agents, we find that appellant’s arrest occurred as he stood within his home at the doorway of his home and was first confronted by the agents with their guns drawn.... It is extremely doubtful that [appellant] would have believed that he was free to leave at any time or to request the officers to leave after the initial encounter. A reasonable person, under those circumstances, would have thought he was under arrest.
Al-Azzawy, 784 F.2d at 892-893, citing United States v. Johnson, 626 F.2d 753, 755-56 (9th Cir.1980), aff'd on other grounds, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). See also United States v. Patterson, 648 F.2d 625, 632 (9th Cir.1981) (citation omitted) (“Whether an arrest has occurred ‘depends on all of the surrounding circumstances, including the extent that freedom of movement is curtailed and the degree and type of force or authority used to effectuate the stop.’ ... The question is whether, under all of the circumstances, ‘a reasonable person would conclude he was under arrest.’ ”). This is an objective standard. The question is whether a reasonable person would believe *1074 that he or she was free to leave under the circumstances. Hodari D., 499 U.S. at 627-28, 111 S.Ct. 1547; Al-Azzawy, 784 F.2d at 892-93.
As the majority acknowledges, this was the standard the district court used when it instructed the jury regarding the law of arrest. Nothing has changed the standard for arrest between when we decided Al-Azzawy and today. The majority states as much by relying on the Supreme Court’s definition that a person is seized when, “taking into account all of the circumstances surrounding the encounter, the police conduct would ‘have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.’ ”[4] Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting Michigan v. Chesternut, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) and citing Hodari D., 499 U.S. at 628, 111 S.Ct. 1547). Yet the majority now faults the district court for instructing the jury using language taken directly from Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870. The majority states that the jury was improperly instructed on the standard for identifying an arrest, yet it fails to state what the new jury instruction regarding arrest should be, or suggest a new, more comprehensive jury instruction that would satisfy its new standard.
The majority appears to be announcing a new principle in Fourth Amendment law: that, in the context of barricaded suspects or armed standoffs, the standard for whether the suspect feels “free to leave” is no longer a reasonable person standard that a jury may decide, but a subjective standard based on the suspect’s reaction to being surrounded by armed officers, and being told to lay down his 18 guns and exit his apartment. The majority finds it persuasive that “Fisher was quite clear that he did not wish to leave,” and that Fisher expressed a desire to go about his business at home. Not only does the majority ignore the Supreme Court’s repeated statements that the standard is an objective one that may be determined by the reasonable people on a jury, but their position ignores the practical reality that armed standoffs and barricaded suspects often involve irrational, desperate, and decidedly unreasonable people.
The majority’s misguided analysis of the facts concentrates on Fisher’s state of mind and actions, ignoring the mountain of evidence before the jury about the MERGE team surrounding the apartment with sirens blaring, pointing guns at Fisher, telling Fisher to come out through a bullhorn, tossing in a throw phone, and using other means of informing Fisher that he was surrounded, and that he should surrender peacefully. Here, the MERGE arrived at around 7:00 a.m., evacuated the building at 7:30 a.m., and shut off Fisher’s power at 8:48 a.m. A reasonable person could conclude that he or she was not free to choose between terminating or continuing the encounter with the law enforcement officers when MERGE arrived, but would be certain of it by the *1075 time the power was shut off. Construing the evidence in the light most favorable to the City, Pavao, 307 F.3d at 918, it would have been perfectly reasonable for the jury to conclude that the arrest occurred when the police surrounded Fisher’s apartment. The twelve people on the jury could have, and in this case certainly did conclude that this behavior constituted the arrest. The majority points to no evidence that shows that this is an unreasonable interpretation of the facts under Supreme Court or our court’s precedent, or that any other interpretation would have been compelled by any new or implied jury instructions.
C. Escape.
After conceding that the jury could have found that the San Jose Police Department seized Fisher for the purposes of the Fourth Amendment before 6:30 a.m., the majority raised the question of whether or not he escaped for the purposes of the Fourth Amendment and concluded that he had. The majority reasons that Fisher “escaped” by disappearing from view and refusing to come out, and therefore, in order to seize Fisher again, the officers had to secure an arrest warrant, or additional arrest warrants. Nothing in the Supreme Court’s decision in Hodari D., relied upon by the majority for this odd proposition, compels this result.
In Hodari D., the Supreme Court discussed the narrow question whether a show of authority (pursuing the defendant) alone seizes the person. 499 U.S. at 625-26, 111 S.Ct. 1547. The Supreme Court stated that an arrest requires “either physical force” or “submission to an assertion of authority.” Id. at 626, 111 S.Ct. 1547 (emphasis in original). Applying this principle to the facts, the Court concluded that no seizure occurs while the suspect is fleeing from a show of authority. Id. at 628-29, 111 S.Ct. 1547.
Hodari D. concerned fleeing in public, on public streets, however, not a situation where a person is surrounded in their own home. See id. at 622-23, 111 S.Ct. 1547 (discussing facts in the case — that Hodari D. began fleeing from the officers on sight, tossed an object later determined to be crack cocaine, and then the officer tackled Hodari D.). The majority’s interpretation of Hodari D. to mean that Fisher escaped by remaining in his apartment contradicts the principle that a person is seized when “in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.”[5] Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870. Logically, the majority’s conclusion overturns our jurisprudence holding that a person is seized in his or her home for the purposes of the Fourth Amendment when the officers make a show of force sufficient to convey to a reasonable person that he is under arrest and not free to leave his home or dwelling. See Al-Azzawy, 784 F.2d at 893 (affirming the district court’s filing that the suspect was arrested inside his residence where “the police had completely surrounded appellee’s trailer with their weapons drawn and ordered him through a bullhorn to leave the trailer and drop to his knees.”).
*1076 In my view, the better, more reasonable, interpretation of submission for the purposes of barricaded or surrounded suspects is that the person submits by remaining barricaded or remaining in the home. This interpretation is consistent with our own precedent in AUAzzawy and the decisions in other circuits. See Al-Azzawy, 784 F.2d at 893; Ewolski, 287 F.3d at 506; see also United States v. Maez, 872 F.2d 1444, 1450 (10 Cir.1989) (collecting cases.). The suspect in that situation has accepted that there is, in effect, only one peaceful outcome — his or her eventual surrender. Only if the suspect flees and successfully evades the police blockade by leaving the house or other building the police surrounded and eludes attempts to take them into physical custody, may the suspect be said to have escaped and an arrest warrant becomes necessary.
To say that a suspect escapes every time he or she retreats from public view even though the officers know that he or she is in the building and surrounded, creates an analytical nightmare for law enforcement agencies. For example, may a bank robbery suspect trapped in a bank “escape” under the majority’s analysis by ducking behind the counter, requiring the police to obtain an arrest warrant to continue surrounding the building or before taking any further steps to resolve the situation?[6] Under the majority’s analysis, does a person “escape” every time he or she moves to another room out of view of the officers, or closes the drapes or blinds?
My interpretation complies with the Supreme Court’s admonition that courts “consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes.” United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). It also applies the same “common sense and ordinary human experience” that the jury presumably applied to the facts in this case. Id. Therefore, I conclude that Fisher was arrested when the officers surrounded his apartment and it became readily apparent to a reasonable person that he was not free to leave. This occurred some time around 6:30 a.m. on October 24. I also conclude that Fisher did not escape for the purposes of the Fourth Amendment, and that police officers involved in standoffs are not required to obtain an arrest warrant every time the subject disappears from view. Because Fisher conceded that the officers had probable cause to arrest him when they surrounded his apartment, the remaining issue is whether or not exigent circumstances continued between the seizure and when the officers took physical custody of Fisher. See Kirk v. Louisiana, 536 U.S. 635, 637-38, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (requiring finding regarding exigent circumstances for complete analysis of a warrantless arrest and search.).
D. Exigent Circumstances.
Exigent circumstances are “those circumstances that would cause a reasonable person to believe that entry ... was neces *1077 sary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement concerns.” United States v. Brooks, 367 F.3d 1128, 1135 (9th Cir.2004). “The exigencies must be viewed from the totality of circumstances known to the officers at the time of the warrantless intrusion.” United States v. Licata, 761 F.2d 537, 543 (9th Cir.1985). As the Supreme Court recognized in Brigham City v. Stuart, “[t]he role of a peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties.” — U.S. —, 126 S.Ct. 1943, 1949, 164 L.Ed.2d 650 (2006). The majority acknowledges that the pertinent time to determine whether an exigency exists is at the time that the arrest is effectuated, but then proceeds to ignore that principle.
The district court granted Fisher’s Rule 50(b) motion because it found that there were no exigent circumstances between 6:30 a.m. and 2:35 p.m. because Mr. Fisher was not seen during this time. As noted, the jury reasonably could have concluded that the arrest occurred when the MERGE team surrounded the apartment and Fisher became aware he was surrounded. Regardless, the majority presumes to substitute its own version of the evidence for the jury’s determinations, and announces that the arrest did not occur until 1:00 p.m. or later. At that time, the majority concludes, there were no exigent circumstances and thus, the warrantless arrest was invalid. Alternatively, the majority suggests that even if the arrest occurred earlier, when police surrounded Fisher’s apartment, “it is far from clear that sufficient exigency existed to explain the failure to obtain a warrant.” I disagree, as did the jury.
The jury was instructed that “[ejxigent circumstances are those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay an arrest until a warrant could be obtained.” Although the jury verdict form did not require the jury to make a separate finding on exigent circumstances, the jury implicitly found sufficient exigency to excuse the warrantless arrest when it returned a defense verdict.
In an effort to undermine the jury’s determination, the majority latches onto Dorman v. United States, 435 F.2d 385, 392-93 (D.C.Cir.1970) (en banc), and concludes that because the Dorman factors do not compel one clear result as to whether there was sufficient exigency at the time of the arrest, the jury erred when it implicitly found sufficient exigency. But see United States v. Snyder, 852 F.2d 471, 473-74 (9th Cir.1988) (finding acts incident to a valid arrest did not constitute additional arrests).
The majority’s acknowledgment that the facts do not compel one clear result is an express concession that there is not only one reasonable conclusion that is contrary to the jury’s verdict. Accordingly, judges are not at liberty to disturb the verdict. Pavao, 307 F.3d at 918. Moreover, the majority significantly understates the gravity of the circumstances. Officers observed, and were told by Fisher’s wife, that Fisher was drinking heavily while cleaning some 18 guns and rifles. Indeed, Fisher admitted to drinking an entire twelve-pack of beer during the evening. Fisher moved the guns around his apartment throughout the night, pointed a rifle in the general direction of officers more than once, and on two occasions, aimed directly at two officers, one of whom he threatened to shoot if she accepted his invitation to enter his apartment. He was *1078 non-responsive to officers’ efforts to speak with him, other than to ramble about his Second Amendment right to bear arms. Officers felt, and the jurors evidently agreed, that Fisher posed a threat to the safety and security of the public and the officers.
The majority also relies heavily on United States v. Alvarez, 810 F.2d 879, 883 (9th Cir.1987) to support an argument that we require a good-faith effort to obtain a warrant in every case where the government claims exigent circumstances. Alvarez is factually distinguishable because the exigent circumstance claimed in Alvarez was that the police feared a suspect in another location might become suspicious if there was additional delay before delivery of a large amount of cocaine. Id. at 880. Furthermore, the holding in Alvarez was that exigent circumstances did not exist that could excuse the absence of, or failure to obtain, an arrest warrant. See id. at 881, 882 (reviewing “a conclusion of exigent circumstances” de novo and concluding that “[t]he agent’s actions in this case were thus fundamentally inconsistent with any true exigency.”). In this case, the brandishing of firearms accompanied by threats against the officers, Fisher’s drinking, and Fisher’s erratic behavior all created a real and immediate danger to the public and the officers.
The passage of dicta quoted by the majority does not support a requirement that law enforcement make a good-faith effort to seek a warrant every time they claim an exigent circumstance excuses the warrant.[7] Id. at 883. Rather, the quoted passage stands for the unremarkable proposition that the government must present sufficient evidence of exigent circumstances or some other justification for not obtaining a warrant if exigent circumstances do not exist.[8] Id.
The Sixth Circuit, in Estate of Bing v. City of Whitehall, analyzed a strikingly similar situation involving an armed standoff with an unstable, possibly intoxicated person and decided “that exigency did not terminate due to the passage of time or the police’s actions.” 456 F.3d 555, 565 (6th Cir.2006). Specifically, the Sixth Circuit noted that, “[t]he passage of time did not terminate the exigency because the ticking of the clock did nothing to cut off Bing’s access to his gun, or cure him of his willingness to fire it, or move to safety the people nearby who refused to evacuate.”[9] Id. Noting that the police had to take time to gather intelligence, wait for backup, and execute their plan, the Sixth Circuit con- *1079 eluded that these acts “did not terminate the exigency.” Id. Furthermore, the Sixth Circuit decided that “the gathering of information by police, even in the face of immediate danger, does not negate a dangerous exigency.”[10] Id. at 566. In addition, the Sixth Circuit in Estate of Bing analyzed the use of alternative means— using pepper gas and a bag phone — for resolving the standoff, and found that they did not negate the exigency. Id. at 566— 69.
The majority’s decision creates a clear circuit split on how to analyze the exigent circumstances in an armed standoff, because it cannot be reconciled with the Sixth Circuit’s decision in Estate of Bing. If the Sixth Circuit can reasonably conclude that the exigency that created the need for officers to surround the home of an irrational, possibly intoxicated, armed gunman was not negated over the course of a five-hour standoff or the use of pepper gas and a bag phone, then why is it impossible for a jury to reasonably reach the same conclusion?
The twelve jurors in this case could have reasonably found that there was no evidence that sometime between 6:30 a.m. and 2:35 p.m., the officers knew that Fisher no longer had access to guns, was no longer irrational, or was no longer intoxicated. There is nothing in the record that affirmatively negates the exigency created by Fisher when he had 18 loaded firearms, threatened others, pointed his rifle at police, was intoxicated, and was acting irrationally. Under these circumstances, officers had ample grounds to be seriously concerned about their own safety as well as the safety of the public, particularly since the events took place in an apartment complex. Construing the evidence in the light most favorable to the City, as we are required to do, it cannot be said that the jury was unreasonable in concluding that there were exigent circumstances that justified the City’s failure to obtain a warrant before arresting Fisher around 6:30 a.m., and that the exigent circumstances continued throughout the standoff.
Armed standoffs are fluid and dangerous situations that are stressful, tense, and require difficult decisions to resolve peacefully. Not all of them result in the peaceful surrender of the suspect. See Ewolski, 287 F.3d at 499-500 (mentally disturbed, armed, and dangerous father shot his son and himself.). At any time, a standoff can end, or it can explode into violence. Sometimes, hostages are involved. Imposing a requirement that officers must, at some arbitrary and undefined point in an armed standoff, seek an arrest warrant is contrary to our precedent concluding that exigency is established at the time of arrest and continues until negated by some new act or fact. See Lindsey, 877 F.2d at 781-82 (concluding circumstances outside of the officers’ control did not dissipate the exigency.). Furthermore, imposing additional warrant requirements on the use of pepper gas, throw phones, and alternatives to deadly force during armed standoffs would not serve the Fourth Amendment’s purpose of preventing unreasonable searches and seizures, would create unnecessary confusion about the law, and may ultimately endanger the public, the police, and even the suspect.
*1080 CONCLUSION
The jurors in this case reached a verdict that was not only sufficiently supported by the evidence, but entirely proper under Supreme Court and our own precedents. In addition, the jurors in this case reached an eminently reasonable conclusion — that the San Jose Police Department should be commended for handling this dangerous situation properly, and ultimately bringing about a peaceful resolution. The Sixth Circuit, analyzing similar facts, reached the same conclusion as the jury in Estate of Bing. Our own precedents in Lindsey and Al-Azzawy are in accord with the Sixth Circuit’s decision. Making all inferences in favor of the verdict, the jury’s conclusion was a reasonable interpretation of the facts, and supported by substantial evidence. Therefore, the district court should not have granted Fisher judgment notwithstanding the verdict.
For these reasons, I would reverse the district court’s grant of Fisher’s renewed motion for judgment as a matter of law and reinstate the jury’s verdict.

. Our precedents acknowledge that “[a] telephonic warrant may not be obtained simply by calling a magistrate. Among other things, a 'duplicate original warrant' must be prepared in writing and read to the magistrate verbatim.” United States v. Manfredi, 722 F.2d 519, 523 (9th Cir.1983). Furthermore, we have concluded that it is not "a simple procedure.” United States v. Good, 780 F.2d 773, 775 (9th Cir.) cert. denied, 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 920 (1986).

. The district court found only that the officers seized Fisher in his home during this encounter. Any contrary conclusions about when specifically the arrest occurred approaches improper appellate fact-finding, especially in light of our obligation to make all reasonable inferences in favor of the jury’s verdict.

. Al-Azzawy held that because the defendant "was in his trailer at the time he was surrounded by armed officers, and since he did not voluntarily expose himself to their view or ' control outside his trailer, but only emerged under circumstances of extreme coercion, the arrest occurred while he was still inside his trailer.” Id. at 893.

. The majority gives too much meaning to the phrase "go about his business” as used in Bostick. This language did not change the inquiry into a subjective one, but is simply a restatement of the objective standard for a detention that the Supreme Court used in Mendenhall. The Supreme Court explicitly discussed Bostick in Hodari D. and concluded that "Mendenhall establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.” Hodari D., 499 U.S. at 628, 111 S.Ct. 1547.

. The Sixth Circuit rejected this argument in Ewolski v. City of Brunswick, concluding that surrounding the house and parading an armored vehicle in front of the house were “an intentional application of physical force and show of authority made with the intent of acquiring physical control.'' 287 F.3d 492, 506 (6th Cir.2002). The majority’s interpretation of escape in the context of barricaded or surrounded suspects creates an unnecessary inter-circuit split of authority, without any compelling reason. See Kelton Arms Condo. Ass’n v. Homestead Ins. Co., 346 F.3d 1190, 1192 (9th Cir.2003) (“we decline to create a circuit split unless there is a compelling reason to do so.”).

. I would also refuse to impose a warrant requirement on efforts to utilize a "throw phone” to communicate with barricaded suspects. The cases cited by the majority, Kyllo v. U.S., 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) and Silverman v. U.S., 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961) involved efforts to eavesdrop on suspects without their knowledge. In particular, in Silverman, the officers used a "spike mike” inserted into a heating duct from the neighboring building to listen in on conversations. Silverman, 365 U.S. at 506-07, 81 S.Ct. 679. With a throw phone, the intrusion is a good-faith effort to communicate with the barricaded suspect, who is plainly informed about the phone, and is free to toss the phone back to the officers.

. The full passage from Alvarez reads:
The government argues that obtaining a telephone warrant is not an easy task, and it points to our decision in United States v. Good, 780 F.2d at 775. But our decision here does not invariably require the government to have a telephone warrant before it moves in on a dangerous suspect. It simply requires the government to attempt, in good faith, to secure a warrant or to present evidence explaining why a telephone warrant was unavailable or impractical.
810 F.2d at 883.

. Because, in my view, the majority announces a new warrant requirement for armed standoffs when exigent circumstances clearly exist and continue until the end of the standoff, the officers may have been entitled to qualified immunity.

.The Sixth Circuit, ironically, cited to this court's opinion in United States v. Lindsey, 877 F.2d 777, 782-83 (9th Cir.1989), where we concluded that it was improper to evaluate exigent circumstances after the warrant-less entry, and that a one-hour delay while officers waited for backup “did not dissipate the exigency.” The majority and the district court's position that courts may analyze exigency after the seizure of a surrounded suspect, without evidence of any facts that negate the initial exigent circumstance, implicitly overrules Lindsey.

. As the Supreme Court has stated, ''[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others.” Warden v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). We have also recognized this principle in the context of exigent circumstances. See Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1170 (9th Cir.2003) (denying habeas corpus where delay by police for investigation did not negate exigent circumstances); Bailey v. Newland, 263 F.3d 1022, 1033 (9th Cir.2001) (same).