Macario Belen DAGDAGAN, Plaintiff,

v.

CITY OF VALLEJO, Vallejo Officer J. Wentz, Vallejo Officer John Boyd, Vallejo Officer Sgt. J. Miller and Does 1–30, inclusive, Defendants.

No. 2:08–CV–00922–GEB–GGH.

United States District Court,
E.D. California.

Jan. 7, 2010.

Order Granting Stay Feb. 26, 2010.

Peter W. Alfert, Hinton, Alfert & Sumner, Walnut Creek, CA, Todd Boley, Todd Boley, Attorney at Law, Oakland, CA, for Plaintiff.

Alan M. Cohen, City of Vallejo, City Attorney's Office, Vallejo, CA, John Robert Whitefleet, Terence John Cassidy, Porter Scott, Sacramento, CA, Peter W. Alfert, Hinton, Alfert & Sumner, Walnut Creek, CA, for Defendant.

*ORDER GRANTING AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTIONS*

GARLAND E. BURRELL, JR., District Judge.

On September 2, 2009, Plaintiff Macario Dagdagan filed a motion for partial summary judgment on certain of his Fourth Amendment claims alleged under 42 U.S.C. section 1983 and his state claims alleged under California Civil Code section 52.1. Specifically, Plaintiff seeks partial summary judgment on his claims that Vallejo Police Officers Wentz and Boyd (collectively, "Defendants") violated his Fourth Amendment rights by "entering [his] home without a warrant" and "arresting [him] without probable cause." (Not. of Mot. for Partial Summ. J. 1.) Plaintiff contends that liability under the Fourth Amendment gives rise to liability under California Civil Code section 52.1. (*Id.*) Plaintiff argues summary judgment is warranted because the undisputed facts demonstrate Defendants violated his Fourth Amendment rights when, without a warrant, they entered his apartment, questioned him, and then arrested him.[1] Defendants oppose Plaintiff's motion, and seek to continue or dismiss it under Federal Rule of Civil Procedure 56(f). Further, each Defendant filed a cross motion for summary judgment, arguing the defense of qualified immunity precludes liability for Plaintiff's claims under the Fourth Amendment. The motions were heard on October 13, 2009. For the reasons stated below, Plaintiff's motion for partial summary judgment is GRANTED and DENIED in part and Defendants' motions are DENIED.

## I. LEGAL STANDARDS

Under Rule Federal Rule of Civil Procedure 56(c), the party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S., 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies this burden, "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (quotations and citation omitted) (emphasis omitted). When decid-

---

1. Plaintiff's briefs indicate that the portion of his motion challenging Defendants' questioning of him after their entry need only be decided if Defendants' warrantless entry is found to be justified.

ing a summary judgment motion, all reasonable inferences that can be drawn from the evidence "must be drawn in favor of the non-moving party." *Bryan v. McPherson*, 590 F.3d 767, 772 (9th Cir.2009).

Further, the defense of qualified immunity requires a two-step analysis:

> First, the court determines whether the facts show the officer's conduct violated a constitutional right. If the alleged conduct did not violate a constitutional right, then the defendants are entitled to immunity and the claim must be dismissed. However, if the alleged conduct did violate such a right, then the court must determine whether the right was clearly established at the time of the alleged unlawful action. A right is clearly established if a reasonable official would understand that what he is doing violates that right. If the right is not clearly established, then the officer is entitled to qualified immunity. While the order in which these questions are addressed is left to the court's sound discretion, it is often beneficial to perform the analysis in the sequence outlined above. Of course, where a claim of qualified immunity is to be denied, both questions must be answered.

*Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir.2009) (quotations and citation omitted).

## II. DEFENDANTS' MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(f)

■ Defendants seek a continuance or dismissal of Plaintiff's motion under Federal Rule of Civil Procedure 56(f) ("Rule 56(f)") premised on their inability to depose two individuals, Gina Kearney and Paul Turner. (Opp'n. 7:4–17.) Defendants have not successfully served Kearney for a deposition; and they subpoenaed Turner but he failed to appear. (Laira-more Decl. ¶¶ 2–4; Whitefleet Decl. ¶¶ 8–9.) Defendants expect Kearney to testify about her 911 emergency telephone call in which she reported that Plaintiff assaulted her, the injuries she suffered as a result of this reported assault, and the nature of her relationship with Plaintiff. Defendants spoke with Kearney when they responded to her 911 call, after which Defendants attempted to speak with Plaintiff, and ultimately entered Plaintiff's apartment without a warrant. Defendants expect Turner to provide evidence of what Defendants observed before they entered Plaintiff's apartment. (Whitefleet Decl. ¶¶ 10, 11.) Plaintiff opposes the motion, arguing Defendants have not demonstrated the testimony of either Kearney or Turner is material to the issues in Plaintiff's motion. (Reply 19:10–15.)

To prevail on their Rule 56(f) motion, Defendants must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of Cal. on Behalf of California Dept. Of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Defendants, however, have not demonstrated that the additional discovery they seek is "essential to resist" Plaintiff's motion. *See id.* Plaintiff's motion addresses whether Defendants were authorized under law to enter his apartment without a warrant. The summary judgment evidentiary record indicates that the testimony Defendants seek is either cumulative of evidence already in the record or irrelevant to the motion. Therefore, Defendants' Rule 56(f) motion is denied.

## III. STATEMENT OF FACTS

The parties dispute the facts concerning Defendants' entry into Plaintiff's apart-

ment and what transpired therein. However, Plaintiff adopts Defendants' version of the facts for the purposes of his motion for partial summary judgment, only disputing Defendants' characterization of the weapon Plaintiff allegedly used in the reported assault as well as several inferences Defendants seek to have drawn from that evidence. Defendants move to have certain declarations and exhibits attached to Plaintiff's motion stricken from the record. However, this portion of Defendants' motion is denied as moot because Plaintiff agrees that Defendants' version of the facts in the summary judgment record are to be used when deciding Plaintiff's motion.

The summary judgment evidentiary record reveals that on June 2, 2007, at approximately 10:51 p.m., Gina Kearney placed a 911 emergency telephone call to the police, reporting that twenty-five minutes earlier, Plaintiff threatened to kill her with a knife at Plaintiff's apartment. (Pl.'s Opp'n. to Defs.' Statement of Additional Undisputed Material Facts ("SAUF") ¶ 3; Defs.' Opp'n. to Pl.'s Separate Statement of Undisputed Material Facts ("SUF") ¶ 1; Powell Decl. ¶ 4.) In response to Kearney's 911 call, Defendants were dispatched to Kearney's residence at 1020 Santa Clara Street in Vallejo, California at approximately 11:19 p.m. (Pl.'s Opp'n. to Defs.' SAUF ¶ 3; Powell Decl. ¶ 5.)

When Defendants arrived at Kearney's residence, Kearney told Defendant Boyd that Plaintiff assaulted her earlier in the day when she went to his apartment to retrieve a car she had loaned him. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 2–4.) Kearney also stated Plaintiff had been drinking. (Pl.'s Opp'n. to Defs.' SAUF ¶ 4.) When reporting the assault to Defendants, Kearney

appeared upset, tearful, her hands were shaking, and she complained that the back of her head hurt. (*Id.* ¶ 8; Defs.' Opp'n. to Pl.'s SUF ¶ 10.) Defendants, however, did not observe any signs of physical injury. (Defs.' Opp'n. to Pl.'s SUF ¶ 10.)

Kearney further reported that when she was at Plaintiff's apartment, she and Plaintiff had an argument, in the course of which, Plaintiff "grabbed the back of her head and threatened to kill her while he held a butcher knife." [2] (Defs.' Opp'n. to Pl.'s SUF ¶¶ 3–4.) Kearney said she then kneed Plaintiff in the groin, got a hold of the knife and called the name of the manager of the apartment building, Beverly Good. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 5–6.) Good intervened, and the knife was removed from Plaintiff's apartment. (Defs.' Opp'n. to Pl.'s SUF ¶ 9; Pl.'s Opp'n. to Defs.' SAUF ¶ 7; Boyd Depo. 37:9–14, 38:24–25.)

After speaking with Kearney, Defendants left her home and went to Plaintiff's residence at 421 Louisiana Street in Vallejo, California, to speak with Plaintiff and hear his version of what had transpired. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 11–12.) When Defendants arrived at Plaintiff's apartment, they observed that the door to the apartment was open. (*Id.* ¶ 19.) Defendants also saw that a light was on in the apartment, and rice was scattered on the kitchen floor. (*Id.* ¶ 20.) Specifically, Boyd testified he could see from the doorway of Plaintiff's apartment "rice all over the linoleum [kitchen] floor." (Boyd Depo. 64:9–10.) Boyd also testified, that from the doorway, he could see only the corner of the stove but could hear "gas or some type of noise." (Boyd Depo. 63:7–64:4.) Defendants' counsel stated at the hearing

---

**2.** Defendants argue Plaintiff assaulted Kearney with a meat cleaver instead of a butcher knife. (Defs.' Opp'n. to Pl.'s SUF ¶ 4.) However, evidence has not been presented supporting this argument.

on the motions, that from the landing outside of Plaintiff's apartment, the Defendants could not tell if there was anything cooking on top of the stove.

While outside Plaintiff's apartment, Defendants announced their presence by calling out "Vallejo Police." (Pl.'s Opp'n. to Defs.' SAUF ¶ 24.) There was no response. (*Id.* ¶ 25.) After a few seconds, Defendants entered Plaintiff's apartment. (*Id.*) The doorway to Plaintiff's apartment opens into a small kitchen. After their entry, Boyd turned the stove burner off. (Pl.'s Opp'n. to Defs.' SAUF ¶ 11; Boyd Depo. 70:12.) Defendants moved from the kitchen into a bedroom, where they found Plaintiff lying in bed under blankets, and apparently asleep. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 43–44, 47.) Defendants saw empty beer bottles on the night stand next to Plaintiff's bed. (*Id.* ¶ 52.) Defendants again announced their presence but Plaintiff did not respond. (*Id.* ¶ 45.) Boyd then grabbed Plaintiff's leg and tugged on it. (*Id.* ¶ 46.) Plaintiff responded by saying something to the effect of "leave me alone" or "let me go to sleep." (*Id.* ¶ 47.)

Boyd asked Plaintiff to identify himself, and Plaintiff provided his name. (*Id.* ¶ 48.) Boyd then told Plaintiff that Kearney had reported that he had assaulted her with a butcher knife. (*Id.* ¶ 49; Boyd Depo. 92:3–4.) Plaintiff responded by telling Defendants "to get the fuck out of his house" and rolled over as if to go back to sleep. (Defs.' Opp'n. to Pl.'s SUF ¶ 51.) Boyd continued to ask Plaintiff to discuss the reported assault and provide "his side of the story." (*Id.* ¶ 53.) Plaintiff refused to cooperate or answer those questions. (Pl.'s Opp'n. to Defs.' SAUF ¶ 18.) Plaintiff was "verbally aggressive and agitated." (*Id.* ¶ 12; Boyd Depo. 96:6–22; Wentz Depo. 58:13–18.)

After several minutes of questioning, Plaintiff sat up in bed, with his hands clenched in a fist position by his waist. (Defs.' Opp'n. to Pl.'s SUF ¶¶ 57–58.) However, Plaintiff never struck at or swung at either Defendant. (*Id.* ¶ 58.) Wentz then showed his taser and warned Plaintiff multiple times that he would be tased if he did not cooperate. (Pl.'s Opp'n. to Defs.' SAUF ¶ 20.) Plaintiff still refused to comply with Defendants' requests, and Boyd told Plaintiff he was under arrest for "delaying or obstructing [his] investigation." (Defs.' Opp'n. to Pl.'s SUF ¶ 60; Boyd Depo. 98:5–11.) Specifically, Boyd testified, "we were trying to get a statement from him, and after he was, you know, telling me and telling Officer Wentz several times to fuck off and this and that, at that point I told him he was under arrest for delaying or obstructing my investigation." (Boyd Depo. 98:5–11.)

Then, one of the Defendants told Plaintiff to lay on his stomach and put his hands behind him or he would be tased. (Pl.'s Opp'n. to Defs.' SAUF ¶ 21; Defs.' Opp'n. to Pl.'s SUF ¶ 62.) Plaintiff refused, and again told Defendants to "fuck off." (Pl.'s Opp'n. to Defs.' SAUF ¶ 21.) Defendant Wentz then fired his taser which sent two probes towards Plaintiff. (Defs.' Opp'n. to Pl.'s SUF ¶ 65.) Once tased, Plaintiff sat straight up as if the taser had no effect; and, he continued to refuse to place his hands behind his back. (Pl.'s Opp'n. to Defs.' SAUF ¶ 22.) Plaintiff also resumed swearing. (Defs.' Opp'n. to Pl.'s SUF ¶ 69.) Wentz then tased Plaintiff again. (*Id.* ¶ 71.) Thereafter, Boyd was able to lie Plaintiff's body flat on the mattress and handcuff him. (*Id.*) Subsequently, medics arrived who transported Plaintiff to the hospital where he received medical care. (*Id.* ¶¶ 83–85.)

All criminal charges against Plaintiff were voluntarily dropped by the District Attorney. (*Id.* ¶ 86.)

## IV. DISCUSSION

### A. Plaintiff's Fourth Amendment Claims

Plaintiff argues he is entitled to partial summary judgment on his Fourth Amendment claims since Defendants impermissibly entered his apartment without a warrant, questioned him regarding a reported assault, and subsequently arrested him. Defendants' argue their actions were justified under the Fourth Amendment, and alternatively, they are entitled to qualified immunity.

### 1. The Warrantless Entry

 Plaintiff argues Defendants' warrantless entry into his apartment violated his rights under the Fourth Amendment. As stated by the Ninth Circuit:

The Fourth Amendment provides: 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' Searches and seizures inside a home without a warrant are presumptively unreasonable. The presumption, however, is not irrebuttable. There are two general exceptions to the warrant requirement for home searches: exigency and emergency. These exceptions are narrow and their boundaries are rigorously guarded to prevent any expansion that would unduly interfere with the sanctity of the home. In general, the difference between the two exceptions is this: The "emergency" exception stems from the police officers' community caretaking function and allows them to respond to emergency situations that threaten life or limb; this exception does not derive from police officers' function as criminal investigators. By contrast, the "exigency" exception does derive from the police officers' investigatory function; it allows them to enter a home without a warrant if they have both probable cause to believe that a crime has been or is being committed and a reasonable belief that their entry is necessary to prevent the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.

*Hopkins,* 573 F.3d at 763 (quotations, brackets and citations omitted).

Since it is undisputed that Defendants entered Plaintiff's apartment without a warrant, unless either the emergency or exigency exception applies, Defendants' warrantless entry violated Plaintiff's rights under the Fourth Amendment. Defendants argue their entry was justified under both exceptions.

### a. The Emergency Exception

 Defendants contend they were authorized to enter Plaintiff's apartment under the emergency exception since the following facts gave them "probable cause to believe a burglary had occurred:" the door was open late at night, rice was on the kitchen floor, a light and the stove were on, and there was no response to their announcement of police presence. (Opp'n. to Mot. for Summ. J. 10:18–19.) Defendants alternatively argue their observations gave them reason to believe that "there could be injured parties" inside Plaintiff's apartment. (*Id.* 10:25.)

 However, the exigency exception, not the emergency exception, is applicable when law enforcement officers conduct a warrantless search of a home to investigate a burglary. *See U.S. v. Erickson,* 991 F.2d 529, 533 (9th Cir.1993) (stating that a burglary investigation could not justify warrantless entry into home under the emergency exception; however, exigent circumstances could justify a warrantless

entry into a residence if facts known to the officers suggested that a burglary was in progress and supported probable cause to enter to learn what was happening).

■ Under the emergency exception, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). The " 'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. It requires only an objectively reasonable basis for believing that a person within the house is in need of immediate aid." *Michigan v. Fisher,* —— U.S. ——, 130 S.Ct. 546, 548, —— L.Ed.2d —— (2009) (quotations and citations omitted). That is, at the time of their warrantless entry, the police officers must have had "an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger." *Id.* at 549 (quotations and citation omitted); *see also U.S. v. Snipe,* 515 F.3d 947, 952 (9th Cir.2008) (articulating Ninth Circuit's two-pronged test for application of emergency exception; the first prong asking whether, "considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm.").

Defendants have not shown their entry was justified under the emergency exception since the record is devoid of facts indicating anyone was injured in the Plaintiff's apartment. Other than Kearney's statement that she had kneed Plaintiff in the groin, Defendants had no reason to believe Plaintiff was injured. Application of this exception requires more than mere speculation of injury. *See Hopkins,* 573

F.3d at 764 (holding that warrantless entry to check for injuries when responding to report of minor hit and run car accident was not justified under emergency exception as there was no indication that the accident had caused any injuries). Therefore, in light of the totality of circumstances, it was not objectively reasonable for Defendants to believe "that medical assistance was needed or persons were in danger." *Fisher,* 130 S.Ct. at 547. The emergency exception does not justify Defendants' warrantless entry into Plaintiff's apartment.

### b. The Exigency Exception

■ For the exigency exception to apply, the Defendants "must satisfy two requirements: first, [they] ... must prove that [they] had probable cause to search [Plaintiff's apartment]; and second, ... [they] must [also demonstrate] that exigent circumstances justified the warrantless intrusion." *Hopkins,* 573 F.3d at 768. Probable cause for a search requires that there be "known facts and circumstances ... sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Hopkins,* 573 F.3d at 767 (quotations and citation omitted). Exigent circumstances exist when "there is a compelling reason for not obtaining a warrant-for example, [when there is] a need to protect an officer or the public from danger, a need to avoid the imminent destruction of evidence, when entry in hot pursuit is necessary to prevent a criminal suspect's escape or [there is] a need to respond to fire or other emergencies." *Fisher v. City of San Jose,* 509 F.3d 952, 960 (9th Cir.2007) (quotations and citation omitted). Therefore, when law enforcement officials rely on the exigency exception, they must demonstrate that they "attempt[ed], in good faith, to secure a warrant or to present evidence

explaining why a telephone warrant was unavailable or impractical." *Id.* at 961.

Defendants make two arguments in support of their contention that the exigency exception justified their warrantless entry. First, Defendants argue their entry was justified because they believed a burglary had either occurred or was in progress at Plaintiff's apartment. (Opp'n. to Mot. for Summ. J. 13–14.) Defendants contend the following observations made upon their arrival at Plaintiff's apartment gave them probable cause to believe Plaintiff's apartment had been burglarized or that a burglary was in progress: the door was open late at night, a light was on, the stove was on, rice was on the kitchen floor, and there was no response to the announcement of police presence. (Opp'n. 12:17–24.) "To determine if the officers had probable cause to enter [Plaintiff's apartment], we examine the totality of the circumstances known to the officers at the time they entered. Probable cause requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred." *Murdock v. Stout*, 54 F.3d 1437, 1441 (9th Cir.1995), *abrogated on other grounds by, LaLonde v. County of Riverside*, 204 F.3d 947, 957 (9th Cir.2000).

Defendants argue the Ninth Circuit's decision in *Murdock v. Stout* supports their position that they were authorized to enter Plaintiff's apartment without a warrant to investigate a potential burglary. 54 F.3d at 1442. *Murdock*, however, is distinguishable since in that case the police were dispatched to the plaintiff's house to investigate a report of suspicious activity suggesting a potential burglary. *Id.* at 1441. Upon their arrival, the officers discovered an open door at the rear of the house. *Id.* Based upon these facts alone, the Ninth Circuit concluded there was not probable cause to support the officers' entry. *Id.* However, the officers in *Murdock* also "observed several indications that a resident was or should have been at the residence. The lights were on and a television was on.... The officers [then] attempted to make contact with the resident ... but received no answer ...." *Id.* at 1442. The Ninth Circuit held that "[t]hese additional pieces of information, indicating that a resident should have been home, but was not responding, combined with the earlier report of suspicious activity and the presence of an open door tip[ped] the scales to supply the officers with probable cause to believe that some criminal activity had occurred or was occurring ...." *Id.* at 1442. Further, the Ninth Circuit explicitly noted in *Murdock* "there was no indication ... that the officers were using their burglary investigation as a pretext for conducting a search for evidence in Murdock's home." *Id.* at 1442–43.

Here, the situation is different. Defendants were not responding to a reported burglary; they went to Plaintiff's apartment to speak with Plaintiff about a reported assault. Defendants' observations that Plaintiff's door was open at night, that a light and the stove were on, that rice was on the floor, and that there was no response to their announcement of their presence, did not give them probable cause to believe a burglary had occurred or was in progress. Further, upon entry into Plaintiff's apartment, Defendants did not look for additional evidence of a burglary; rather, they found Plaintiff in bed and attempted to speak with him regarding the assault Kearney had reported. (Pl.'s Opp'n. to Defs.' SAUF ¶ 15.) Defendants' after-the-fact argument that a potential burglary justified their entry appears to be a pre-textual basis for entering Plaintiff's apartment to investigate Kearney's assault allegations.

Moreover, even "[i]f a burglary had occurred in the recent past, there was no need for the police to enter [Plaintiff's apartment]. The only possible basis for finding exigent circumstances is if the facts support a finding that the police had a legitimate reason to believe that a burglary was in progress." *Guam v. Manibusan*, Crim. No. 89–000136A, 1990 WL 320756, at *4 (D. Guam Feb. 16, 1990). Defendants "bear[ ] the burden of showing the existence of exigent circumstances by particularized evidence, and this burden is not satisfied by mere speculation" that a burglary was in progress. *Bailey v. Newland*, 263 F.3d 1022, 1033 (9th Cir.2001) (citations and quotations omitted).

■ Defendants alternatively argue, given Kearney's report and the condition of Plaintiff's apartment upon their arrival, there was probable cause to believe that the crime of either assault or battery had been committed there earlier and "exigency existed to immediately investigate...." (Opp'n. 14:2.) Defendants, however, have not demonstrated that their entry and search was supported by any exigency making it reasonable for them to enter Plaintiff's apartment without a warrant. "[T]he presence of exigent circumstances necessarily implies that there is insufficient time to obtain a warrant; therefore, the [Defendants] must show that a warrant could not have been obtained in time." *Bailey*, 263 F.3d at 1033 (citations and quotations omitted). Defendants simply posit that "exigency existed to avoid the improper frustration of legitimate law enforcement efforts." (Opp'n. to Mot. for Summ. J. 13:27–28.) Defendants made no attempt to obtain a warrant, and have not explained why a telephone warrant was unavailable or impractical. Since Defendants have not sustained their burden of showing an exigency excused the warrant requirement, the exigency exception does not justify their entry into Plaintiff's apartment to investigate the reported assault. Therefore, the exigency exception does not sanction Defendants' actions.

### 2. The Warrantless Arrest

Plaintiff also argues Defendants violated his Fourth Amendment rights by arresting him in his home without a warrant. Defendants counter the arrest was justified on two grounds. First, they contend they had probable cause to arrest Plaintiff for the assault Kearney reported. Defendants argue "exigency is established by Plaintiff's intoxication, the open door, the violent nature of the crime of an assault with a [butcher knife], and the clear potential of Plaintiff presenting a danger to the community at large, but more specifically of potential further assault of Kearney...." (Opp'n. 20:16–19.) Defendants also assert they had probable cause to arrest Plaintiff under California Penal Code Section 148 for delaying or obstructing a police officer.[3] Defendants contend that their observations of "Plaintiff with close[d] fists" provided exigent circumstances to effectuate the arrest. (Opp'n. 21:1.)

■ "[T]he warrantless arrest of a person is a species of seizure" that under the Fourth Amendment, must be reasonable to be constitutional. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, (1980). "The Fourth Amendment protects against warrantless arrest inside a person's home in the same fashion

---

**3.** California Penal Code Section 148(a)(1) provides that "[e]very person who willfully resists, delays or obstructs any public officer .... in the discharge or attempt to discharge any duty of his or her office or employment

... shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

that it protects against warrantless searches of the home, which is to say that police officers may not execute a warrantless arrest in a home unless they have both probable cause and exigent circumstances." *Hopkins*, 573 F.3d at 773. Since Defendants arrested Plaintiff in his home without a warrant, the arrest is constitutional only if Defendants can demonstrate both probable cause and exigent circumstances.

■■■ Defendants' first argument-that they properly arrested Plaintiff for the reported assault-fails to satisfy the requirements of the Fourth Amendment. Defendants' arrest of Plaintiff on this ground was unreasonable for the same reasons that Defendants' entry was impermissible. *See Hopkins*, 573 F.3d at 773. "[I]f the entry was illegal, the arrest was as well." *Gallagher v. City of Winlock, Washington*, 287 Fed.Appx. 568, 574 (9th Cir.2008).

■■■ Defendants' second argument-that Plaintiff was permissibly arrested for a violation of California Penal Code Section 148 ("Section 148")-is also unpersuasive. The elements of a violation of Section 148(a)(1) are: "(1) the [individual] willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the [individual] knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir.2005). However, "[i]n California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." *Id.* Since Defendants unlawfully

entered Plaintiff's apartment, Plaintiff's refusal to answer questions relating to the assault or to cooperate with the police officer's investigation cannot be the basis of a constitutional arrest under Section 148. Therefore, Defendants' arrest of Plaintiff under Section 148 violated Plaintiff's Fourth Amendment right against unreasonable seizure.

### B. Defendants' Motion for Qualified Immunity

■■■ Each Defendant argues even if his actions violated Plaintiff's Fourth Amendment rights, the defense of qualified immunity shields him from liability.[4] The qualified immunity analysis hinges upon whether Plaintiff's Fourth Amendment rights were clearly established in 2007 when Defendants engaged in the unconstitutional conduct. *See Hopkins*, 573 F.3d at 770–71. "To be clearly established, the contours of the [constitutional] right must be sufficiently clear [so] that a reasonable official would understand that what he is doing violates [the constitutional right at issue]. The dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the [qualified] immunity defense." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009) (quotations and citations omitted).

### 1. Application of Qualified Immunity to Defendants' Warrantless Entry

The standard articulated in *United States v. Cervantes* in 2000, clearly established that "[t]he police must have reasonable grounds to believe that there is an

---

4. Plaintiff has not agreed to treat Defendants' version of events as true for the purpose of decision on each Defendant's qualified immunity motion. However, since it is determined

that each Defendant fails to prevail on his qualified immunity defense using Defendants' version of the facts, it is unnecessary to discuss the parties' factual disputes.

emergency at hand and an immediate need for their assistance" to be justified in making a warrantless entry into a residence. *United States v. Cervantes*, 219 F.3d 882, 888 (9th Cir.2000), *overruled by, U.S. v. Snipe*, 515 F.3d 947 (9th Cir.2008) (articulating applicable standard for emergency exception); *see also Hopkins*, 573 F.3d at 771. The "qualified immunity analysis [however,] . . . presents a somewhat different question than whether there were reasonable grounds to believe that there was an emergency at hand; [instead,] in determining whether the officers' conduct violated clearly established law, [the court] must ask whether in 200[7,] a *'reasonable officer' would have known* that he lacked reasonable grounds to believe that there was an emergency at hand." *Hopkins*, 573 F.3d at 771 (quotations and citation omitted) (emphasis in original).

 "[A] reasonable officer would indeed have known that the emergency exception to the Fourth Amendment would not encompass a warrantless entry" on the facts of this case. *Hopkins*, 573 F.3d at 771. Based upon Kearney's report and the condition of Plaintiff's apartment upon Defendants arrival, a reasonable officer would have concluded that he lacked reasonable grounds for believing there was an emergency necessitating an immediate need of assistance. When the evidence the officers have provided does not contain adequate justification for their entry, it can be concluded that "it would have been clear to a reasonable officer that such [an entry] was unlawful." *Id.* at 771 (quotations and citation omitted). Therefore, Defendants qualified immunity motion under the emergency exception is denied.

 contours of the exigency exception were also well-defined in 2007. At that time, it was clearly established that the exigency exception required the presence of both probable cause and exigent

circumstances. *See U.S. v. Martinez*, 406 F.3d 1160, 1164 (9th Cir.2005); *U.S. v. Lai*, 944 F.2d 1434, 1441 (9th Cir.1991) (abrogated on other grounds). Further, "the existence of probable cause to arrest and search does not eliminate the need for a search warrant absent exigent circumstances." *Bailey v. Newland*, 263 F.3d 1022, 1033 (9th Cir.2001).

 Since a reasonable officer should have known that "exigent circumstances necessarily imply insufficient time to obtain a warrant," and that mere investigation of a crime does not itself create an exigency justifying a warrantless entry into a residence, Defendants qualified immunity argument under this exception is unavailing. *U.S. v. Lindsey*, 877 F.2d 777, 781 (9th Cir.1989); *see also Groh v. Ramirez*, 540 U.S. 551, 558, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (noting that "a warrantless entry to search for weapons or contraband even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within" is unlawful absent exigent circumstances). Further, a reasonable officer would have known that the condition of Plaintiff's apartment upon Defendants' arrival, did not "[give] rise to exigent circumstances justifying [a] warrantless entry . . . ." *Id.* Therefore, Defendants' motion is also denied on this ground.

**2. Application of Qualified Immunity to Defendants' Warrantless Arrest**

 In 2007, it was well-established that an arrest constitutes a seizure for purposes of the Fourth Amendment. *See Hopkins*, 573 F.3d at 774. "There can be no doubt that the law in this respect was clearly established prior to 200[7] and thus should have been known by a reasonable officer." *Id.* Moreover, a reasonable officer would have known that a warrantless arrest within Plaintiff's home required the

presence of both probable cause and exigent circumstances. *See Kirk v. Louisiana,* 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (holding that both exigent circumstances and probable cause are required to justify a warrantless arrest inside the home).

In light of Defendants' unlawful entry, no reasonable officer would have believed that Plaintiff could have been arrested for violating California Penal Code Section 148(a). Further, no reasonable officer would have believed exigent circumstances existed to arrest Plaintiff for the reported assault. Therefore, Defendants' motion is also denied on this ground.

### C. Plaintiff's Claims Under California Civil Code Section 52.1

██ Plaintiff also seeks partial summary judgment on his claims under California Civil Code section 52.1, in which he alleges Defendants' "actions constituted interference with [P]laintiff's rights under the Fourth Amendment." (Not. of Mot. for Partial Summ. J. 1.) Section 52.1(b) provides that "[a]ny individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States ... has been interfered with ... may institute and prosecute ... a civil action for damages ... and other appropriate equitable relief...." Cal. Civ.Code § 52.1(b). Plaintiff, however, fails to address his claims under section 52.1 in his motion and provides no authority supporting his conclusory argument under Section 52.1. Therefore, this portion of Plaintiff's motion is denied.

### V. CONCLUSION

For the stated reasons, Plaintiff's motion for partial summary judgment on his Fourth Amendment claims based on Defendants' warrantless entry into his apartment and his subsequent arrest is GRANTED and Plaintiff's motion under California Civil Code section 52.1 is DENIED. Defendants' motions are DENIED.

### *ORDER GRANTING DEFENDANTS' MOTION TO STAY*

Defendants Wentz, Boyd, Melville and the City of Vallejo ("defendants") filed a motion on February 5, 2010, in which they seek an order staying this action pending resolution of their interlocutory appeal to the Ninth Circuit. This appeal challenges an Order filed January 7, 2010 (the "Order"), that granted plaintiff's motion for partial summary judgment and denied defendants Wentz and Boyd's qualified immunity motion on the following issues: that defendants Wentz and Boyd violated plaintiff's Fourth Amendment rights when they entered plaintiff's apartment without a warrant, and when they subsequently arrested him inside his apartment.

Defendants also filed an ex *parte* application for an expedited hearing on their stay motion. This application was granted and an abbreviated briefing schedule was established. Defendants' motion was heard on February 22, 2010. For the reasons stated below, defendants' motion to stay is GRANTED.

### I. LEGAL STANDARD

██ A denial of a summary judgment motion seeking qualified immunity may, in certain circumstances, be reviewed by interlocutory appeal. *Schwenk v. Hartford,* 204 F.3d 1187, 1198 (9th Cir.2000); *see also Wilkins v. City of Oakland,* 350 F.3d 949, 951 (9th Cir.2003) (stating that the appellate court "has jurisdiction ... over an interlocutory appeal where the ground for the motion in question is qualified immunity") (citation omitted). The Ninth Circuit has "jurisdiction over an interlocutory appeal from the denial of quali-

fied immunity where the appeal focuses on whether defendants violated a clearly established law given the undisputed facts" but lacks jurisdiction over "an interlocutory appeal that focuses on whether there is a genuine dispute about the underlying facts." *Knox v. Southwest Airlines,* 124 F.3d 1103, 1107 (9th Cir.1997). However, "[w]here disputed facts exist[,] [the Ninth Circuit] will determine if the denial of qualified immunity was proper by assuming that the version of events offered by the non-moving party is correct." *Wilkins,* 350 F.3d at 951; *see also Jeffers v. Gomez,* 267 F.3d 895, 903 (9th Cir.2001) (stating that "[w]here disputed facts exist ... we can determine whether the denial of immunity was appropriate by assuming that the version of material facts asserted by the non-moving party is correct").

■ The filing of an interlocutory appeal "divests the district court of jurisdiction to *proceed with trial,*" *Chuman v. Wright,* 960 F.2d 104, 105 (9th Cir.1992) (emphasis added), and "over the *particular issues involved in [the] appeal.*" *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 886 (9th Cir.2001) (emphasis added). However, the filing of an interlocutory appeal does not divest the trial court of jurisdiction over "aspects of the case that are not the subject of the appeal." *United States v. Pitner,* 307 F.3d 1178, 1183 n. 5 (9th Cir.2002) (citing *Plotkin v. Pacific Tel. and Tel. Co.,* 688 F.2d 1291, 1293 (9th Cir.1982)).

## II. DISCUSSION

At issue is whether this action should be stayed in the situation here, where defendants' qualified immunity motion was denied based on defendants' version of events. Defendants argued their entitlement to qualified immunity based on their version of events. (Defs.' Opp'n 24:16–25.) At the October 13, 2009 hearing on plaintiff's motion for partial summary judgment and defendants' cross-motion for qualified immunity, only defendants' version of events was discussed, and plaintiff did not argue at the hearing that his version of events should have been used in deciding defendants' cross-motion. Plaintiff's counsel indicated he had nothing to say beyond what was in plaintiff's brief. Plaintiff's version of events includes plaintiff's averment that the door to his apartment was closed when defendants arrived; and, therefore defendants could not see or hear the things they averred comprises their justification for their warrantless entry into his apartment. Under defendants' version of events, the door to plaintiff's apartment was open.

The Order denying defendants' qualified immunity motion states: "Plaintiff has not agreed to treat Defendants' version of events as true for the purpose of decision on each Defendant's qualified immunity motion. However, since it is determined that each Defendant fails to prevail on his qualified immunity defense using Defendants' version of the facts, it is unnecessary to discuss the parties' factual disputes." (January 7 Order 17–18 n. 4.) The Order ultimately concluded that the law applicable to the defendants' warrantless entry and arrest was clearly established in 2007, and under defendants' version of the events, neither defendant was entitled to qualified immunity since a reasonable officer would have known that he lacked reasonable grounds to believe that there was either an emergency or exigent circumstances justifying the warrantless entry into plaintiff's apartment. Further, the ruling concluded that a reasonable officer also would have known that exigent circumstances did not justify plaintiff's warrantless arrest for the reported assault defendants were investigating, nor would a reasonable officer have believed, given the

illegality of the entry, that plaintiff could have been arrested for violating California Penal Code section 148(a). Section 148(a) proscribes action that delays or obstructs a police officer. However, at the February 22, 2010 hearing on defendants' stay motion, it became evident that denying defendants' qualified immunity motion based upon defendants' version of events was, perhaps, unprecedented.

After defendants filed their Notice of Appeal, plaintiff filed a motion for partial summary judgment on the following issues: that defendant Wentz's use of a taser violated his Fourth Amendment rights; that defendant Boyd violated Plaintiff's Fourth Amendment rights by failing to prevent Wentz from tasering him; and that defendant Melville's search of Plaintiff's home without probable cause and for purposes unrelated to legitimate law enforcement purposes, violated his Fourth Amendment rights. Defendants then filed their stay motion and their *ex parte* request for an expedited hearing on that motion.

 requests in his opposition to defendants' stay motion, that the Court certify defendants' appeal as "frivolous" under the rationale of the Ninth Circuit's decision in *Chuman. Chuman* authorizes a district court to certify in writing that an appeal is frivolous or waived; and, if this certification issues the appeal does not automatically divest the district court of jurisdiction to continue the proceedings on the issues involved in the appeal. 960 F.2d at 105. Plaintiff argues this certification is warranted because defendants improperly seek a reversal of the qualified immunity determination based upon their version of events. Plaintiff contends that to seek an interlocutory appeal, defendants must rely upon plaintiff's version of events. Defendants respond since the factual disputes were not addressed in the Order,

and the Order was decided based upon defendants' version of events, they need not rely upon plaintiff's version in their appeal. Further, defendants argue their appeal is not frivolous since "there is a colorable argument [that] the law was not clearly established in the specific context facing Defendants Wentz and Boyd."

 "An appeal is frivolous if it is wholly without merit." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1003 n. 3 (9th Cir.2002) (quoting *Amwest Mortgage Corp. v. Grady*, 925 F.2d 1162, 1165 (9th Cir.1991)); *see also In re George*, 322 F.3d 586, 591 (9th Cir.2003) (stating that "[a]n appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit"). "This means that the appeal must be so baseless that it does not invoke appellate jurisdiction such as when the disposition is so plainly correct that nothing can be said on the other side." *Schering Corp. v. First DataBank, Inc.*, No. C 07–01142 WHA, 2007 WL 1747115 at *3 (N.D.Cal. June 18, 2007) (quoting *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir.1989)).

The Order conclusively determined defendants' liability for their warrantless entry and arrest. Accordingly, the Order operates as a final decision on defendant Wentz and Boyd's qualified immunity defense on those issues. Plaintiff, therefore, has not shown that defendants' appeal is "wholly without merit."

 Defendants argue a stay is warranted since "[t]he filing of an appeal of a summary judgment order denying qualified immunity automatically stays trial and further proceedings in the district court, absent certification by the district court that the [appeal] was frivolous or has been waived." (Mot. to Stay 2:25–28.) Plaintiff counters a stay is not warranted since his pending motion for partial summary judg-

ment does not involve issues raised in defendants' appeal.

Defendants have demonstrated that plaintiff's pending motion for summary judgment relies upon issues involved in defendants' interlocutory appeal. Plaintiff argues in his motion since the Order concluded that defendants' entry was illegal, there was no governmental interest justifying the defendants' use of force following the entry. Specifically, plaintiff asserts that "[i]n light of the Court's ruling on the illegality of the entry ... defendants can cite no legitimate governmental interest in using force on [plaintiff]...." (Mot. for Partial Summ. J. 16:12–13.) Plaintiff further argues defendants' use of force may be unreasonable and unconstitutional because their entry was unconstitutional. (*Id.* 16:2–6.) Plaintiff also argues that because defendants' entry was unconstitutional, "the officers' illegal actions provoked" plaintiff and they "may not claim they acted in self defense." (*Id.* 5:19–21.)

Since it is apparent that issues involved in defendants' appeal are also potentially involved in plaintiff's pending summary judgment motion, decision on plaintiff's motion should be deferred until after defendants' interlocutory appeal is resolved. Therefore, defendants' motion to stay is GRANTED and all proceedings in this case are STAYED pending resolution of defendants' appeal.

## III. CONCLUSION

For the stated reasons, defendants' motion to stay is granted. This action is stayed pending resolution of defendants' interlocutory appeal to the Ninth Circuit. The pending motions for summary judgment are deemed withdrawn, and may be re-noticed for hearing after defendants' appeal is resolved. All scheduled dates are vacated; an amended pretrial schedul-

ing order will issue after the appeal is resolved.